WEED et al. v. CENTRE & C. ST. RY. CO.

(Circuit Court, E. D. Pennsylvania. June 19, 1905.)

No. 41.

CONTRACTS—FAILURE OF CONSIDERATION—PERFORMANCE.

Where defendant agreed to pay plaintiffs $20,000 in consideration of a loan of plaintiffs' credit for the purpose of raising funds to construct a street railroad, but no moneyed institution or individual could be found who was willing to accept plaintiffs' indorsement as sufficient security for advances, and as a result the enterprise was entirely abandoned, without any notes being ever executed or offered plaintiffs for indorsement, and plaintiffs were not asked to lend their credit and did not assume any obligation, plaintiffs were not entitled to recover the balance of the consideration unpaid.

Motion by Defendant for Judgment on Reserved Point Notwithstanding the Verdict.

Charles Schlegel and A. M. Imbrie, for plaintiffs.
D. L. Krebs and Alex. Simpson, Jr., for defendant.

J. B. McPHERSON, District Judge. At the conclusion of the testimony both parties asked the court for binding instructions, and this, as was decided in Beuttell v. Magone, 157 U. S. 157, 15 Sup. Ct. 566, 39 L. Ed. 654, "was necessarily a request that the court find the facts, and the parties are therefore concluded by the finding made by the court." A verdict was thereupon directed in favor

of the plaintiffs, but the court reserved the question whether there was any evidence to go to the jury in support of the plaintiffs' claim. The present motion is for judgment in favor of the defendant notwithstanding the verdict, upon the ground that there is no evidence to support the finding.

The action is brought upon the following agreement between the plaintiffs, who were a banking firm of New Haven, Conn., and the defendant, a corporation of the state of Pennsylvania:

"This agreement, made and entered into at New York City, this sixteenth day of April, 1902, by and between the Centre and Clearfield Street Railway Company, a corporation organized and existing under and by virtue of the laws of the Commonwealth of Pennsylvania, party of the first part, and the banking firm of Weed & Williams, of New Haven, Connecticut, parties of the second part, witnesseth:

"That whereas the party of the first part desires to provide funds necessary to pay for the construction and equipment of an electric railroad through the Borough of Osceola, Clearfield County, Pennsylvania, and from said Borough of Osceola to Phillipsburg, Centre County, Pennsylvania, according to its line of survey and location, and

"Whereas the parties of the second part are willing to extend a certain credit and guaranty of funds on the terms and conditions hereinafter stated,

"Now therefore, the parties hereto hereby agree as follows:

"First. The parties of the second part hereby agree to endorse and guarantee the note or notes of the party of the first part at such time or times and in such sum or sums as may be necessary to provide funds to pay for labor and material to be used in the construction and equipment of said railroad. The aggregate amount that the said parties of the second part agree to guarantee shall be a sum equal to eighty-five (85) per cent. of the face or par value of four hundred thousand ($400,000) dollars of the first mortgage bonds of the party of the first part.

"Second. The parties of the second part shall receive as compensation for said endorsement and guaranty, the sum of twenty thousand ($20,000) dollars, to be paid on the signing of these presents, and as a further compensation shall own and be entitled to receive two-tenths ($2/10$) of the capital stock of the party of the first part.

"Third. The party of the first part hereby agrees to deposit with a trust company hereafter to be selected by the parties hereto, all of the first mortgage bonds of the party of the first part, aggregating $550,000 and all of the capital stock of said party of the first part aggregating $550,000, in trust, as security to the parties of the second part on account of their endorsement and guaranty.

"Fourth. The party of the first part hereby agrees to protect the property of said railroad from all liens and claims whatsoever for labor performed or material furnished or for labor contracted to be performed or material contracted to be furnished prior to the date hereof and hereby agrees to at all times protect the property of said railroad from any claims or litigation that might in any way grow out of contracts that have heretofore been made by the party of the first part or any of its officers or agents.

"The party of the first part further agrees to at all times protect the franchises of said railroad and to procure any rights of way that may be required for the construction and operation of said railroad, which said rights of way shall be vested in and preserved to the party of the first part or its assigns, free and clear of all debt or incumbrance.

"Fifth. It is hereby agreed by both parties hereto that the note or notes that may be executed hereunder and the endorsement and guaranty thereon shall be renewed as often as may be necessary to extend said note or notes to a date one year after the said railroad shall have been completed and put in operation, unless said note or notes shall be paid at an earlier date in the manner hereinafter provided.

"Sixth. It is agreed by the party of the first part that the parties of the second part shall have the right to countersign all engineers' certificates for

labor performed and to approve all bills for the purchase of any material that shall enter into the construction of said railroad and to approve all contracts made for the purchase of rolling stock for use on said railroad.

"Seventh. It is hereby further agreed by both parties hereto that the bonds to be pledged as security hereunder may be released at any time during the continuance of this agreement in blocks of $5,000 par value upon payment to the trust company then holding said bonds a sum equal to not less than eighty-five (85) per cent. of the face or par value of the bonds to be released, which money shall be applied to the payment of the note or notes of the party of the first part bearing the endorsement and guaranty of the parties of the second part."

Only $1,000 was paid to the plaintiffs under paragraph 2, and this suit is brought to recover the remaining $19,000. The agreement does not contemplate that the plaintiffs should advance any money to the defendant, but only that they should lend their credit by indorsing the defendant's notes, and it may be conceded that the plaintiffs were always ready and willing to fulfill their part of the agreement, but the difficulty was that their credit did not enable the defendant to raise the necessary funds. No moneyed institution or individual could be found who was willing to accept the plaintiffs' indorsement as sufficient security for advances, and as a result the enterprise was abandoned. No notes were ever executed or offered to the plaintiffs for indorsement; the road was never built; the stock and bonds were never issued; the plaintiffs were never called upon to lend their credit, and did not assume an obligation of any kind, and they are now under no liability whatever by reason of the agreement. Under such circumstances, I think the contract came to an end, and that the plaintiffs have no legal right, as they certainly have no equity, to ask the defendant to pay them $19,000 in exchange for what turned out to be a valueless promise to indorse the defendant's notes.

Judgment may be entered for the defendant on the reserved point, notwithstanding the verdict.