**JOHN CONLON COAL CO. v. ROCHESTER AMERICAN INS. CO., NEW YORK.**

No. 3419.

District Court, M. D. Pennsylvania.

July 19, 1935.

Leo W. White, of Pittston, Pa., for plaintiff.

Frank P. Slattery and Bedford, Jones, McGuigan & Waller, all of Wilkes-Barre, Pa., for defendant.

WATSON, District Judge.

The plaintiff sued the defendant to recover a sum of money which it claimed to be due it under a certain policy of fire insurance issued by the defendant to the plaintiff covering plaintiff's coal breaker building and machinery and other personal property contained therein.

The case was tried before the court and a jury. When the evidence was all in and both sides had rested, each party moved for a directed verdict. The court directed a verdict for the plaintiff in the sum of $4,600, with interest from February 9, 1932, or a total of $5,208.40. The defendant filed a motion for a new trial. A rule to show cause was granted, and this rule is now before the court for disposition.

The reasons assigned by the defendant in support of its motion for a new trial are: (1) That the directed verdict was against the law; (2) that the directed verdict was against the evidence.

The policy of insurance provides, inter alia, as follows: "Unless otherwise provided by agreement in writing added hereto, this company shall not be liable for loss or damage occurring,— (f) while a described building whether intended for occupancy by owner or tenant, is vacant or unoccupied beyond a period of ten days. * * *" An agreement in typewriting attached to the policy contains, inter alia, the following provisions: "Privileges Granted:— * * * to remain vacant not exceeding thirty (30) days in any one policy year after the period permitted for vacancy in the policy contract; to stand idle as occasion may require."

The defendant contends that the breaker was vacant for more than the forty days permitted by the printed and typewritten stipulations and conditions in the policy, and that the breaker was unoccupied for more than the ten days permitted by the printed stipulations and conditions in the policy.

The uncontradicted testimony was that from February 25, 1932, when the term of one year covered by the policy commenced to run, until July 11, 1932, the date when the fire occurred, the plaintiff's breaker contained all the machinery and equipment necessary to its operation, and

was fully equipped and ready for immediate use. Vacant means without contents, not filled; empty. Webster's New International Dictionary, 1932. Jelin v. Home Insurance Co. (C.C.A.) 72 F.(2d) 326. It could be found from the evidence that the plaintiff's breaker was not vacant at any time between the dates referred to.

■. It has been held that a dwelling house is unoccupied when there is not habitually the presence of human beings, but it cannot be held that a breaker is intended to be lived or dwelt in. In determining what the contract means, the circumstances surrounding the making of and affecting the subject-matter to which it relates should be taken into consideration. The word unoccupied should be construed with reference to the nature and character of the building, the purposes for which it was designed, and the uses contemplated by the parties. It cannot be contended that a church is unoccupied because services are held therein only on Sunday, or that a school is unoccupied because school sessions are not held therein during school vacation. The uncontradicted evidence was that the breaker contained intact all the machinery and equipment necessary for its operation, was kept prepared at all times for immediate use; that there was a watchman in the breaker every day and every night; that the breaker was visited several times each day by the plaintiff's manager and other employees. It is common knowledge in the anthracite regions that breakers are shut down for long periods of time because of lack of orders for anthracite coal.

It could not be found from the evidence that the breaker was abandoned, but it could be found from the uncontradicted evidence that it was being used for the practical purpose of keeping the machinery in proper condition for immediate use for the preparation of coal when market conditions warranted the operation of the breaker. It has been held that, in order to show occupancy of a building used for manufacturing purposes, it is sufficient to show some practical use of the property. Halpin v. Phenix Insurance Company, 118 N.Y. 165, 23 N.E. 482. The defendant contends that a proper interpretation of the policy is that the breaker, in order to be occupied, should of necessity be operated, and that when it was not operated, that

is, when it was idle, it was unoccupied. It is apparent that this is not a proper interpretation when we consider the provisions of the policy permitting the insured premises to stand idle without limit as to time. The interpretation contended for by the defendant is repugnant to and in conflict with the expressed permission for idleness.

My conclusion is, that there was evidence in the case from which it could be found that the breaker was occupied at all times between the dates referred to.

■ The defendant further contends that the breaker remained idle for a longer period than occasion required. The uncontradicted testimony is, that the breaker was not operated at the time the policy was issued, and that it was not operated for a considerable period prior thereto, and that it was not operated at any time while the policy was in force. The uncontradicted evidence is that at all times when the breaker was idle, or not being operated, the plaintiff had no orders or market for coal. In my opinion, such a condition was contemplated by the parties when the insurance policy was issued, and the permission given to the plaintiff was to have the breaker remain idle when there was no occasion to operate it because of lack of orders for coal. It was within the power of the insurance company, if it meant otherwise, to say so in plain terms. Not having done so, it must accept the consequences resulting from the rule that the doubt, for which its own lack of clearness was responsible, must be resolved against it.

■ "When each party asks the court to instruct a verdict in his favor, it is equivalent to a request for a finding of facts, and if the court directs the jury to find a verdict for one of them, both are concluded on the finding of facts." ' Beuttell v. Magone, 157 U.S. 154, 15 S.Ct. 566, 39 L.Ed. 654.

The direction of the verdict for the plaintiff was proper, and a new trial should be refused.

Now, July 19, 1935, the rule to show cause why a new trial should not be granted is discharged, and a new trial is refused. Judgment is directed to be entered on the verdict.